IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA     *

        vs.         *    CRIMINAL NO. MJG-99-0352

ROLANDO STOCKTON       *

\*    \*    \*    \*    \*    \*    \*    \*    \*

<u>MEMORANDUM AND ORDER</u>

The Court has before it Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody entitled "Motion" [Document 530] amending the <u>pro</u> <u>se</u> Motion for 2255 Relief [Document 503] and the materials submitted relating thereto. The Court has held hearings regarding the motion and has had the benefit of the arguments of counsel.

I.   <u>PROCEDURAL BACKGROUND</u>

Defendant Rolando Stockton ("Movant") was charged with Conspiracy to Distribute and Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 846; two counts of Use and Carrying of a Firearm in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); and with being a Felon in Possession of a firearm and ammunition each in separate counts in violation of 18 U.S.C. § 922(g)(1). He was represented through trial by Godwin Oyewole, Esquire ("Trial

Counsel").  As discussed herein, prior to trial, Movant rejected certain plea agreements and proceeded to trial.  At trial he was convicted on all charges.[1]  At sentencing the Court departed downward, over Government objection, from a Guideline sentence of 480 months and sentenced Movant to 330 months.

Movant filed a timely appeal and the Government cross-appealed.  The United States Court of Appeals for the Fourth Circuit affirmed Movant's conviction but reversed the Court's downward departure.  United States v. Stockton, 349 F.3d 755 (4th Cir. 2003).  The appellate court remanded the case, directing the Court to resentence Movant to a term of 480 months.

On March 12, 2004, the Court resentenced Movant to 480 months.  On January 5, 2006, Movant, pro se, filed a motion under 28 U.S.C. § 2255 [Document 494] that the Court initially denied as time barred [Documents 501, 502].  On July 28, 2006, Movant, pro se, filed a motion seeking leave to file a belated appeal from the resentence imposed March 12, 2004 [Document 503].  This motion was denied on July 31, 2006 [Document 504]. On August 14, 2006, Movant, pro se, moved for reconsideration, alleging that, at sentencing, his then counsel ("Resentencing

---

[1]    Prior to sentencing, the Government dismissed one of the two 18 U.S.C. § 924(c) charges.

Counsel") had been directed by the Court to file a timely appeal and promised to do so [Document 507].  The Court obtained the transcript of the sentencing proceedings, found that Movant's allegation was correct, and directed the issuance of a Notice of Appeal <u>nunc</u> <u>pro</u> <u>tunc</u> to the date of resentencing.  [Document 509].  The Court also appointed current counsel to represent Movant in the appeal and any post-conviction proceedings.  The appeal was dismissed by the United States Court of Appeals for the Fourth Circuit on July 18, 2007.  [Document 518].


II.  <u>PROCEDURAL ISSUE</u>

The Government contends that there is a procedural obstacle to the Court's consideration of the instant motion.  The Court does not agree.

As noted above, the original sentence of 330 months was reversed on appeal and the case was remanded for resentencing to 480 months.  On March 12, 2004, Movant was resentenced.  On that date, Movant had ample time to file a motion under 28 U.S.C. § 2255.  The transcript of proceedings at resentencing reflects that the following occurred after sentence was imposed and the Court stated that Movant could file a § 2255 motion:

> THE COURT: . . . With regard to the
> 2255, there's a limitations period to
> bear in mind.  Now, it seems to me that
> there should be no problem in filing a
> timely 2255.  [Resentencing Counsel]
> help him on it.  Make sure it gets done
> timely.
>
> [RESENTENCING COUNSEL]:  I will.

Hr'g. Tr. 12, Mar. 12, 2004.

Movant, with every reason to believe that his counsel
would, as directed by the Court, file a timely § 2255,
reasonably relied upon Resentencing Counsel to do so.
Resentencing Counsel did not do so, however.

On January 5, 2006, Movant, pro se, filed a letter that the
Court deemed to be a § 2255 motion.  [Document 494].  On July
13, the Court, on the record then before it, denied the motion
as untimely.  [Document 501].

On July 28, 2006, Movant filed a Motion to Alter And/or
Amended Judgment [Document 503] stating therein that he had been
assured by Resentencing Counsel that a timely appeal would be
filed and was assured that it had been filed.  He stated that he
contacted the Court in September 2005 and found that there had
been no appeal filed and that, by that time, the time for filing
a § 2255 motion had expired.  Movant stated that he did not wish
to file an out of time appeal but "instead to use those facts to
prove circumstance warranting equitable tolling of the one year

[§ 2255] limitations period."  He cited <u>Davis v. Johnson</u>, 158
F.3d 806, 811 (5th Cir. 1998), holding that the one year § 2255
limitations period is not jurisdictional so that equitable
tolling may be applied.

The Court, not then having the transcript of the
resentencing proceedings, stated, in its Memorandum and Order of
July 31, 2006 [Document 504] denying Movant's motion:

> [Movant] . . . states that he was deceived
> by his lawyer who falsely told him that he
> had filed a timely appeal.
>
> It is this Court's regular practice to
> advise Defendants at sentencing of the need
> for a timely notice of appeal . . . . If
> necessary, the Court would order the
> sentencing transcript to establish that the
> advice was given in this case."

On August 14, 2006, Movant, <u>pro se</u>, filed a letter that the
Court held constituted a motion for reconsideration [Document
507].  Movant stated in the letter that he had not received the
advice to which the Court referred.  Upon consideration of the
letter, the Court obtained the transcript of Movant's
resentencing proceeding and ascertained what had happened.

In its Memorandum and Order of September 15, 2006 [Document
509], the Court found that Movant reasonably believed that his
attorney would take all steps necessary to avoid his being time
barred from filing a § 2255 motion with regard to his sentence.

The Court did not address, in the September 15, 2006, Memorandum and Order, the matter of Resentencing Counsel's failure to file a timely § 2255 motion and, instead, had the Clerk file a Notice of Appeal nunc pro tunc to the resentencing date.  Movant's appeal, based upon the nunc pro tunc filing date, was dismissed by the appellate court on July 18, 2007 as untimely because the time for filing an appeal is jurisdictional.

On August 31, 2007, Movant, pro se, filed a motion in the instant case under Rule 60(b)(6), including therein the contention that equitable tolling should apply to render the § 2255 motion filed January 5, 2006 timely.  In response to that motion, Government counsel stated, on October 17, 2007:

> It would seem the most provident and
> efficient course of action at this time, is
> for the defendant to simply file his
> petition under 28 U.S.C. § 2255.  The
> government will respond to the defendant's
> specific complaints at that time.

Government's Response to Defendant's Motion Pursuant to F. R. Civ. P. 60(b)(6) [Document 522] at 3.

On November 16, 2007, the Court appointed current counsel for Movant.  After obtaining pertinent documents, Movant's counsel conferred with Government counsel and, by letter of June 10, 2008, advised the Court:

> On June 6, 2008, I spoke with [Government
> counsel] regarding the status of the case.

> She indicated to me that if Mr. Stockton
> were to file a § 2255 petition, the
> Government would likely oppose the
> substantive allegations contained within the
> petition, but would not make any procedural
> argument asking for the case to be dismissed
> based on the timing of the petition.  Based
> on my conversation with [Government
> counsel], it is my intention to file a §
> 2255 petition within a reasonable time
> frame.

Letter at 2, June 10, 2008.

On February 5, 2009, counsel for Movant filed the instant motion, a document entitled "Motion" [Document 530] presenting the ground that Movant had been denied the effective assistance of counsel by trial counsel.  On March 16, 2009, the Government filed a Motion to Dismiss the "Motion" as an unauthorized successive petition under § 2255 [Document 536].  It is not necessary to address the question of whether this action was violative of Government counsel's agreement not to seek dismissal "based on the timing[2] of the petition."

As set forth more fully in the Memorandum and Order filed June 19, 2009 [Document 540] the Court held that the January 5, 2006 pro se § 2255 motion should not have been denied as untimely.  See United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000) stating:

---

[2]   I.e., whether the word "timing" refers only to lateness in a calendar sense.

7

> . . . § 2255's limitation period is subject
> to equitable modifications such as tolling.
> . . . Typically . . . circumstances
> [warranting equitable tolling are] external
> to the party's own conduct thus making it
> unconscionable to enforce the limitation
> period against the party.

(internal quotations omitted).

The Court therefore, rescinded its dismissal of the pro se § 2255 motion [Document 503] and deemed the document entitled "Motion" filed by counsel [Document 530] to constitute an Amendment to Petitioner's Motion under § 2255 [Document 503].

The Court, having reconsidered the matter, confirms its prior ruling and finds that the Movant's substantive issues must be addressed.

III. SUBSTANTIVE CONTENTIONS

By the instant motion, Movant contends that Trial Counsel's and Resentencing Counsel's representation violated his Sixth Amendment right to effective assistance of counsel.

To prevail on this contention, Movant must show (1) that counsel's representation fell below an objective standard of reasonableness,[3] and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[3]     Thus overcoming a presumption that counsel's conduct was reasonable.

proceedings would have been different.  <u>Strickland v.
Washington</u>, 466 U.S. 668, 687 (1984).  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome of the proceedings.  <u>Id.</u> at 694.

In this case the Movant contends that Counsel and
Resentencing Counsel were ineffective in regard to plea
agreement offers and in failing to seek to delay the
resentencing to await decision in a then-pending Supreme Court
case.

A.   <u>Plea Agreement Offers</u>

1.   <u>The Contention</u>

Movant was indicted in a Superseding Indictment [Document
33] on August 19, 1999 and Trial Counsel was appointed by
September 22, 1999.  A Second Superseding Indictment was filed
September 23, 1999) [Document 70] and Movant was arraigned
thereon the next day.

As discussed more fully below, the Movant was offered two[4]
opportunities to plead guilty pursuant to agreements that would

---

[4]   Movant testified that there was a third offer made during
trial.  He stated: "Right at the trial, the government came,
before the judge, just before the judge came back and offered me
12 years."  Hr'g Tr. 68, Aug 20, 2009.  Movant stated that Trial
Counsel said the case was going well and there was no discussion
of the offer.  The Government denies that there was any third

have called for a sentence of no more than ten years.  Movant

rejected these offers, proceeded to trial and was convicted.  He

was originally sentenced to a 330 month term but, following his

appeal and the Government's cross-appeal, was resentenced to 480

months.

Movant, by current counsel, stated in the instant motion:

> Trial counsel was ineffective for improperly
> advising [Movant] of the maximum penalty for
> his offenses and the applicable guidelines
> range.  [Movant] relied on trial counsel's
> faulty advice and rejected a plea offer.
> [Movant] was offered a plea that would have
> resulted in six-years[5] incarceration.
> Believing, based on trial counsel's
> erroneous advice, that he faced no more than
> ten years incarceration if he lost the
> trial, [Movant] rejected the plea offer.
> [Movant] was later offered a second plea for
> twelve[6] years.  That plea was also rejected.

Mot. ¶ 12.a.

The Court will address, in turn, the contentions that

Movant was unaware of the maximum possible penalty he faced if

he proceeded to trial and that Trial Counsel did not effectively

advise him regarding his decision to accept or reject the

proffered plea agreements.

---

offer and Trial Counsel did not testify that there was one.  The
Court finds it more likely than not that Movant's recollection
of such an offer is erroneous.
[5]    As discussed herein, the first offer, in writing, provided
for a likely sentence in the range of 92-115 months.
[6]    The evidence establishes that the second offer would have
been to a charge providing a 10 year maximum sentence.

2.   The Frye and Lafler Decisions

The Supreme Court has recently issued two decisions
addressing the question of ineffective assistance of counsel
with regard to a defendant's rejection of a plea agreement.
Lafler v. Cooper, 566 U.S. ___, 132 S. Ct. 1376 (2012) and
Missouri v. Frye, 566 U.S. ___, 132 S. Ct. 1399 (2012).

In Frye, a defendant (a repeat driving on revoked license
offender) was charged with a felony providing a possible four
year prison term.  The prosecutor sent defendant's counsel a
letter proposing two possible plea agreements, under one of
which there would be a misdemeanor plea with a recommendation of
service of a 90 day sentence and under the other a plea to a
felony with a recommendation of a 3 year sentence, no
recommendation of probation but a recommendation of service of
10 days in jail.  132 S. Ct. at 1404.  Counsel did not convey
the offers to the defendant and they expired.  Id.  The
defendant was then arrested again for driving on a revoked
license and ended up pleading guilty without a plea agreement.
Id.  He received a three year prison sentence.  Id. at 1404-05.

The Frye court stated:

>    This Court now holds that, as a general
>    rule, defense counsel has the duty to
>    communicate formal offers from the

11

prosecution to accept a plea on terms and
conditions that may be favorable to the
accused.  Any exceptions to that rule need
not be explored here, for the offer was a
formal one with a fixed expiration date.
When defense counsel allowed the offer to
expire without advising the defendant or
allowing him to consider it, defense counsel
did not render the effective assistance the
Constitution requires.
                    *   *   *
To show prejudice from ineffective
assistance of counsel where a plea offer has
lapsed or been rejected because of counsel's
deficient performance, defendants must
demonstrate a reasonable probability they
would have accepted the earlier plea offer
had they been afforded effective assistance
of counsel. . . . To establish prejudice in
this instance, it is necessary to show a
reasonable probability that the end result
of the criminal process would have been more
favorable by reason of a plea to a lesser
charge or a sentence of less prison time.

Id. at 1408-09.

     In Lafler, a defendant charged with assault with intent to

commit murder and other charges was offered a plea agreement

that included a recommendation for a sentence of 51 to 85

months.  132 S. Ct. at 1383.  Counsel advised the Defendant to

reject the offer because, counsel said, the prosecution could

not establish intent to commit murder.  Id.  Both sides agreed

that the advice was deficient.  Id. at 1384.  The Defendant

proceeded to trial, was convicted and received a sentence of 185

to 360 months.  Id. at 1383.

12

The <u>Lafler</u> Court stated:

> Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.  During plea negotiations defendants are "entitled to the effective assistance of competent counsel" . . . . In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial. . . .
>
> The question for this Court is how to apply <u>Strickland's</u> prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial.
>
> To establish <u>Strickland</u> prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.

<u>Id.</u> at 1384 (citations omitted).

To prevail, Movant must establish that Trial Counsel provided ineffective assistance in regard to Movant's decision to reject the offered plea agreements and that, but for the ineffective assistance, there is a reasonable probability that the result would have been different.  See <u>Frye</u>, 132 S. Ct. at 1409; <u>Lafler</u>, 132 S. Ct. at 1384.

The instant case arises in a significantly different
context from that addressed in Frye and Lafler.  Movant does not
contend that he was uninformed of the plea agreement offers (as
in Frye, 132 S. Ct. at 1404) nor that he was he given
incompetent advice to reject the offers and proceed to trial (as
in Lafler, 132 S. Ct. at 1384).

Movant contends that he was ineffectively represented
because Trial Counsel erroneously advised him that the maximum
potential sentence faced if he proceeded to trial was ten years,
and that Trial Counsel did not affirmatively recommend
acceptance of the plea agreements and did not persuade him to
accept the offer.


    3.   Can there be a remedy?

At the initial argument on the instant motion, Government
counsel took the position that the Court did not have authority
to provide any remedy in the instant case.  It is unnecessary to
discuss the matter further because the same argument was
presented to, and rejected by, the Supreme Court.

As stated in Lafler:

            Petitioner and the Solicitor General . . .
            contend there can be no finding of
            Strickland prejudice arising from plea
            bargaining if the defendant is later
            convicted at a fair trial.  The three

14

>                    reasons petitioner and the Solicitor General
>                    offer for their approach are unpersuasive.

132 S. Ct. at 1385.


        4.   <u>Possible Maximum Sentence</u>

       Movant contends that Trial Counsel consistently advised him that if he proceeded to trial on the charges against him and was convicted, the maximum sentence that could be imposed on him was ten years.  However, the Court does not find that Trial Counsel provided such advice.

       Nor does the Court find that Movant was under the impression that he faced no possible sentence in excess of 10 years.  To the contrary, the evidence establishes that Movant was made aware on the record of court proceedings and in the written plea agreement offered to him, that he if he proceeded to trial, he faced a potential sentence in excess of ten years. Indeed, he was informed that he faced a possible life sentence.

       On September 24, 1999, Movant, represented by trial counsel, was arraigned[7] before then Magistrate Judge[8] Bredar.  In the course of the arraignment, the following occurred.

>                    THE COURT:  Ms. [Assistant United
>                    States Attorney] Bennett, why don't you

---

[7]   On the Second Superseding Indictment. Ultimately, there were five superseding indictments.

[8]   Now District Judge.

summarize the charges that are pending
against this particular defendant,
together with the maximum possible
penalties that could be imposed if he
were convicted.

MS. BENNETT:  Yes, Your Honor.  The
defendant is charged in count seven
with the attempted murder of Ricky
Ricardo Jones in aid of racketeering.

                    * * *

The maximum penalty for this count is
ten years.  Mr. Stockton is also
charged in count eight with knowingly,
willfully and intentionally conspiring
with the other named defendants and
others known and unknown to the grand
jury to distribute and possess with
intent to distribute heroin, and <u>the
maximum statutory penalty on count
eight is life imprisonment</u>. . .

                    * * *

THE COURT:  It is also true that if the
defendant was convicted on either
count, he would be subject to a
mandatory --- assessment of $100 per
count, and Mr. Stockton, I also advise
you that if you were convicted in this
case on count seven and sent to prison,
you would also be subject to imposition
of a term of supervised release which
could be up to three years in length,
and that would follow the service of
the term of imprisonment.

                    * * *

<u>With respect to count eight, if you
were convicted and ordered to serve a</u>

16

<u>term of imprisonment and if that term</u>
<u>was less than life</u>, you could also be
ordered to serve a term of supervised
release, and in that case it could be
up to five years in length.

                 \*\*\*

Do you feel that you understand the
nature of these two charges as set out
in count seven and eight, and the
maximum possible penalties that could
be imposed upon you if you were
convicted in this case?

THE DEFENDANT:  Yes, I do.

Hr'g Tr. 3-5, Sept. 24, 1999 (emphasis added).

     Moreover, when orally denying pretrial release, the
Magistrate Judge stated: "[the] maximum term of imprisonment
[if] the defendant is convicted in this case is life."  Hr'g Tr.
28, Sept. 24, 1999.

     Later, on or about October 5, 2000, Government counsel sent
Trial Counsel a letter setting forth the terms of an offered
plea agreement.  This agreement, if accepted, would require
Movant to plead guilty to a One Count Information that would
charge a "felon in possession" count under 18 U.S.C. § 922(g)(1)
and would require the Government to dismiss all other charges.
The letter states that the parties agree that the Guideline

17

Offense Level would be at least 24.  As to Criminal History, the letter states:

> Your client understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level.  It is contemplated that the defendant falls into Criminal History Category V and is not believed to be an armed career criminal.
>
> * * *
>
> Mr. Stockton understands that his criminal history may affect his offense level and criminal history category if he is found to be an Armed Career Criminal pursuant to 18 U.S.C. Section 924(e) and U.S.S.G. Section 4B1.4.

Plea letter 3-4, Oct. 5, 2000.

If Movant had been sentenced in the range for Offense Level 24 and Criminal History Category V, his sentence would have been between 92 and 115 months.  While the letter stated that the parties contemplated that Movant would receive a sentence of no more than ten years, the letter expressly warned that there was a possibility of a greater sentence, stating:

> The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows:  Imprisonment for ten years without parole, followed by a term of supervised release of at least two years, but not more than three years, and a fine of up to $250,000.  In the event that your client is found to be an Armed Career Criminal, as defined at 18 U.S.C. Section

> 924(e) and U.S.S.G. Section 4B1.4, the
> maximum sentence provided by statute for
> violation of 18 U.S.C. Section 922(g)(1) is
> as follows:
>
> Imprisonment for a minimum mandatory
> sentence of fifteen years without parole and
> up to life imprisonment without parole,
> followed by a term of supervised release of
> up to five years and a fine of up to
> $250,000.

Id. at 1-2.

Trial Counsel testified that he reviewed this offer letter with Movant "line by line." Hr'g Tr. 29, Aug. 20, 2009. Movant denies this. It is true that Trial Counsel's memory of details of this specific case was sketchy. Thus, his testimony shall be taken to indicate that a line by line review would have been his normal practice. Nevertheless, the Court finds it more likely than not that Trial Counsel reviewed the plea agreement letter in at least sufficient detail to include a review of the statement therein of the maximum potential sentence faced. Moreover, Movant himself had ample opportunity to read the letter and understand that it stated, as had the prosecutor and Magistrate Judge at arraignment, that there was a possible life sentence even under the reduced charge to which the offer related.[9]

---

[9]   Of course, the plea agreement reflected the belief that Movant would not receive more than a ten year sentence under the agreement. However, there was a reference to a possible –

Moreover, it had to be clear to Movant that the offer called for a plea to only one of the several charges against him and that if the offer were accepted, the Government would not proceed on other, more serious charges.  Hence, it is not credible that Movant would believe that if he rejected the plea agreement, proceeded to trial on all charges and was convicted he could not be sentenced to any more than ten years.  Nor is it feasible to believe that, in discussing the proffered plea agreement, Trial Counsel would render advice refuted by the express terms of the proposed agreement being reviewed.

Finally, Government counsel have presented an affidavit stating that, on March 29, 2001, at a "reverse proffer" session with Movant and Trial Counsel, they summarized the anticipated trial evidence and offered Movant an agreement that would permit him to plead guilty to a weapons offense carrying a ten year maximum sentence.  They stated in their affidavit that:

> Your affiants told Stockton, in clear terms, that he also faced life in prison were he to reject the plea offer.  Stockton was told that a superseding indictment would be sought from the grand jury, and it would contain various drug and weapon counts. Stockton was informed by your affiants that he faced ten years for a violation of 18

---

although unlikely – life sentence even under the plea agreement, refuting the contention that Movant was unaware that a more than 10 year sentence was possible even if should he proceed to trial and be convicted on all charges pending against him.

         U.S.C. Section 924(c) for the shooting of
         Clinton Williams, and that the ten years
         would be consecutive to any other sentence
         he would receive should he be convicted at
         trial.

Attorneys' Affidavit [Document 566] ¶ 4.

     In his testimony, Movant agreed that there was a meeting on

March 29, 2001 at which Government counsel offered a "ten-year

plea." Hr'g Tr. 66, Aug. 20, 2009.  As to being informed of the

possible sentence faced, the record reflects the following

testimony on cross-examination.

         CROSS-EXAMINATION OF STOCKTON

         Q. And you have no recollection at all when
         Mr. Warwick and I were meeting with you that
         we told you you were facing life?  None at
         all?

         A. When I meet with you and Mr. Warwick and
         my counsel, that's all was going on was a
         bunch of screaming,  Y'all telling me you
         going to get found guilty, you going to get
         found guilty --

         Q. And you're going to go to jail --

             MR. LAWLOR:  Objection, Your Honor.  He
             wasn't finished with his answer.

             THE COURT:  All right.  Finish your
             answer.

         A. You going to get found guilty, you going
         to get found guilty and basically, that was
         basically it.  It wasn't no you facing this
         or you looking at this.  There was none of
         that.

Q. So we were screaming at you you're going
to be found guilty --

A. You said take this, take this.  You
better take it, you better take it, we going
to find you guilty.

Q. And we didn't include in that statement
because if you don't, you're going to get
life?

A. I basically shut everything off I mean
because --

Q. So you didn't listen to what we said --

        MR. LAWLOR:  Objection, Your Honor.
        Can he finish his answer, please?

        THE COURT:  Let him finish his answer.

A. Yeah.  Basically, I mean I looked at my
lawyer and my lawyer said he would be down
there to talk to me and that was it.  I
basically – we talked but it was about ten
minutes we was in there and it was a bunch
of screaming going on.  Y'all telling me
what I should do and, you, basically -- that
was basically it.

Q. And you didn't ever ask why we were
screaming at you to take ten years when
that's the maximum you were facing?

A. No.  The thing is this, right.  I know I
mean from people coming back and forth
speaking with the prosecutors, that I mean I
felt anyway that y'all probably wanted me to
testify and that wasn't going to happen.  So
what you were saying, what y'all was saying,
I wasn't really hearing.

Q. Mr. Stockton, you were the very last
defendant out of about 2.  Who were going to
testify against --

A. Maybe it was somebody else y'all had in
mind.  I don't know. . .

Hr'g Tr. 85-86, Aug. 20, 2009.

Movant objects to the Court's consideration of the
affidavit of Government counsel without the opportunity to
cross-examine them.  Although the Court has no reason to doubt
the truthfulness of Government counsel, the Court would permit
such cross-examination were it necessary to rely upon any
disputed statements in the affidavit.  However, such reliance is
not necessary.  As discussed above, by the time of the March 29,
2001 session, Movant had been informed in at least two manners -
at arraignment and in the October 5, 2000 plea agreement letter
- that he faced a possible life sentence and must have been
aware of this possibility.  Moreover, even on Movant's version
of the March 29, 2001 session, he does not deny that the
prosecutors told him that he possible faced life imprisonment
but states that he did choose to listen to what the prosecutors
said.

In sum, the Court does not find that Trial Counsel advised
Movant that he faced a maximum sentence of ten years were he to
be convicted at trial of the charges against him in the

Superseding Indictment.  Moreover, even if Trial Counsel did
not, himself, advise Movant that he would face a potential
sentence of as much as life imprisonment, this information was
presented to Movant at arraignment by the Magistrate Judge and
prosecutor and in the offered plea agreement that was reviewed
with Movant.

Accordingly, Movant is not entitled to relief due to
erroneous advice by Trial Counsel that he faced no more than a
ten year sentence if he rejected the plea agreements available
to him.

B.  <u>Failure to Persuade Movant to Plead Guilty</u>

As Justice Kennedy observed in <u>Frye</u>, it is difficult "to
define the duty and responsibilities of defense counsel in the
plea bargain[ing] process."  132 S. Ct. at 1408.  The Justice
stated:

> 'The art of negotiation is at least as
> nuanced as the art of trial advocacy and it
> presents questions farther removed from
> immediate judicial supervision.'  Bargaining
> is, by its nature, defined to a substantial
> degree by personal style.  The alternative
> courses and tactics in negotiation are so
> individual that it may be neither prudent
> nor practicable to try to elaborate or
> define detailed standards for the proper
> discharge of defense counsel's participation
> in the process.

24

Id. (citations omitted).

In this case, Trial Counsel was faced with the need to provide competent representation while not destroying the attorney/client relationship.  Trial Counsel provided Movant with the written and oral plea agreements and stated that the decision was the client's and not his.  In the hearing, Trial Counsel testified about his advice.

> THE COURT:  Okay.  Can I just be clear, Mr. Oyewol[e]?  I may have missed it.  What was your advice?  What was your advice with regard to these plea offers?
>
> THE WITNESS:  Well, Your Honor, I do not remember exactly what I said.  But I told him that the bottom line, the final decision is his and his alone and as a matter of fact, the court will ask him whether that was the decision he wanted to make.
>
> THE COURT:  Well, do you recall whether you said I advise you to take this offer or advise you to reject this offer?
>
> THE WITNESS:  I don't know if I said it in those words, but I told him that it was a good offer.  I told him it was a good offer. But I'm not sure what language I used to accept or not to accept it.  But I remember that I said it was a good offer.  But whether he accepts it or not is his decision to make.  And you know in the cell that we have talked about the case all the time and every time.  It was clear to me that he had a decision to make.

Hr'g Tr. 55-56, Aug. 20, 2009.

Trial Counsel also testified that, as Movant had stated at
his sentencing, the client always professed his innocence:

> Q. What was the position that Mr. Stockton
> took every time you made him an offer?
>
> A. Well, every time I mentioned that offer
> to him, his position was what he stated in
> open court.  It was in the sentencing
> transcript.  It's on page 27 [of the
> sentencing transcript], that he did not, he
> could not plead to it if he didn't do it,
> and he could not plead guilty.
>
> Q. He wouldn't plead guilty essentially to
> anything because he was innocent?
>
> A. That is correct.  I think it's on page
> 27.
>
> Q.  But other than at sentencing, when he
> said it out loud, did he communicate that to
> you?
>
> A. Yes, yes.  Both in court and out of
> court, yes.

Hr'g Tr. 12, July 19, 2011.

Movant denies that Trial Counsel stated that the offers
were "good."  The Court, although finding that Trial Counsel
testified truthfully to the extent of his recollection, finds
that he could not state the precise words used in his
discussions with Movant.  However, while the Court does not find
that Movant in fact stated that the offers were "good offers,"
the Court does find that Trial Counsel presented the terms of
the offers, answered whatever questions Movant may have asked,

and in no way recommended or suggested that the offers should be
rejected.

Movant presented the testimony of William Purpura, Esquire,
a highly respected member of the criminal defense bar.  Over the
objection of the Government, Mr. Purpura was permitted to state
his opinion that Trial Counsel did not meet the standard of care
for reasonably competent defense counsel.  In particular, Mr.
Purpura testified as follows:

> Q. Now, when you or competent counsel,
> either or both, take a plea offer to a
> client, is it your practice and do you
> believe it's the obligation of defense
> counsel to make an affirmative
> recommendation one way or the other vis-à-
> vis the plea offer?
>
> A. It is the obligation of a defense
> attorney to make a recommendation, and an
> affirmative recommendation based on all of
> the factors that the defense attorney has
> before him.
>
> ***
>
> A. [T]his would be the classic case where I
> would hammer a plea agreement, and a
> competent lawyer would hammer a plea
> agreement.
>
> Q. All right.  Let me, and I apologize in
> this case, let me ask you what you mean when
> you say hammer it.  What do you mean by
> that?  If you could sort of flush [flesh]
> that out for me a little bit.
>
> A. What I mean by hammer a plea agreement
> would be to explain in detail, not only

> explain, but put down in writing exactly
> what the client faces, to visit the client,
> spend time with him, let him know what 40
> years in federal prison really means, the
> likelihood of a conviction as we already
> talked about.  I would go past that, aside
> from spending time, we can and we have often
> in this district, we've had the assistance,
> and I have used, of other attorneys that
> come in, if the client is somewhat tired of
> hearing from you and having them assess to
> avoid a trial what it looks like and have
> them speak to the client as well.  And [the
> Court] has approved that every time it's
> been asked, and that's part of what we have
> here as a resource.

Hr'g Tr. 12, 15, May 6, 2011.

The Court has the greatest respect for Mr. Purpura and for his opinions.  Mr. Purpura is reputed to be, and in the opinion of the Court is, at the highest level of the Baltimore criminal defense bar, particularly in matters such as those involved in the instant case.  Moreover, the Court is fully satisfied that, had Mr. Purpura been defense counsel for Movant, he would have devoted more time and effort than Trial Counsel to seeking to obtain Movant's agreement to the proffered plea agreements. Thus, Mr. Purpura would have made an affirmative recommendation that the offers be accepted and would have made efforts to convince Movant to accept the plea.  Mr. Purpura may well have sought the appointment of another attorney to provide a second opinion to Movant and may well have sought to obtain input from

persons in whom Movant had confidence to provide affirmative
recommendations.

However, the issue before the Court, and ultimately before
the United States Court of Appeals for the Fourth Circuit upon
appeal, is not what the best possible defense counsel could have
done.  Rather, the question is what a post-conviction court must
require of a defense counsel when presented with a proffered
plea agreement, particularly in light of Frye and Lafler.

In light of Frye, it appears well established that a
criminal defense lawyer presented with a plea agreement must
make the client aware of the offer.  See 132 S. Ct. at 1408-09.
Trial Counsel did so.

In light of Lafler, it appears that a criminal defense
lawyer presented with a plea agreement must not provide advice
to reject the offer based upon manifestly erroneous advice that
the defendant will not be convicted if he proceeds to trial.
See 132 S. Ct. at 1384.  Trial Counsel did not advise Movant to
reject the plea offers.  Nor did Trial Counsel provide erroneous
relied upon advice that Movant faced no more than a ten year
sentence if he proceeded to trial.

Trial Counsel did not affirmatively advise Movant to accept
either plea offer.  Even if Trial Counsel stated, as he
testified, that they were "good" offers, he expressly told

Movant that the decision was the client's.  Trial Counsel did not make an affirmative recommendation to accept the offers and did not take steps to persuade Movant to do so.

The Court has not found, or been advised of, precedent articulating a standard for determining when a criminal defense attorney, to be effective, must make an affirmative recommendation of acceptance of a plea agreement and must take such affirmative steps as may be needed to persuade the client to plead guilty.

Of course, Movant should ask the appellate court to set such a standard and, if appropriate, remand the instant case for necessary findings.  However, in considering the matter, the appellate court should consider the extent to which, to paraphrase Justice Kennedy's statement in Frye, it would be prudent or practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's actions upon receipt of a plea offer beyond the requirement of communication to the client and avoiding providing manifestly erroneous advice.  See 132 S. Ct. at 1408.

A standard that would require an affirmative recommendation of acceptance of a plea offer would require a post-conviction court to examine the actions of defense counsel in the particular context in which the offer was made.  This would

30

include, but not be limited to, evaluating the perceived probability of acquittal on some or all charges,[10] comparing the relative sentencing exposure, balancing the probability of having the recommendation accepted against the adverse effect on the attorney/client relationship of unsuccessful persuasive efforts and, ultimately, deciding whether such persuasive efforts that could be successful[11] would cause a resultant guilty plea to be vulnerable to attack as involuntary.**[12]**

In the instant case, Trial Counsel had a client who steadfastly professed his innocence of all charges.[13] Trial Counsel made the professional judgment that an affirmative recommendation was not appropriate but, rather, that it was

---

[10]   In light of the circumstances existing at the time of the plea agreement offer, including what defense counsel knew and should have known about the case that would be tried.

[11]   Thus, a post-conviction court would have to consider whether there should have been a request for an independent second opinion counsel, participation by family members or other advisors, persuasive (but short of coercive) statements from counsel, etc.

[12]   "A guilty plea is not voluntary and must be stricken if that free will is overborne by the prosecutor or by the accused's lawyer." Edwards v. Garrison, 529 F.2d 1275, 1380 (4th Cir. 1975).  (Emphasis added).  Thus, a plea could be held involuntary if counsel's persuasive efforts were found to amount to a threat to withdraw if the defendant continued to refuse to plead guilty, Iaea v. Sunn, 800 F. 2d 861 (9th Cir. 1986) or to constitute telling the defendant "that he has no choice, he must plead guilty." United States v. Carr, 80 F. 3d 413, 416 (10th Cir. 1996).

[13]   The Court will assume that if Movant had been persuaded to plead guilty, the "innocence problem" would have been overcome.

preferable to have the prosecutors summarize the evidence.

Moreover, the Court finds that, in the instant case, Movant

would not have accepted either plea offer had Trial Counsel

simply recommended acceptance.  Much more would have been

necessary to persuade Movant to plead guilty.

Of course, the Court cannot definitively state the

circumstances in which a defense counsel would be held

ineffective for a failure to advise and persuade a client to

plead guilty.  However, the Court concludes that the instant

case does not present such a circumstance.

In sum, the Court does not find that Movant has established

that Trial Counsel provided ineffective assistance in regard to

the plea agreements at issue.


C.   Postponement of Sentencing

In the instant motion, current counsel states:

>Trial counsel was ineffective for failing
>keep abreast of pending litigation relating
>to the binding nature of the now advisory
>Federal Sentencing Guidelines and failing to
>move to postpone [Movant's] resentencing.

Mot. ¶ 12.b.

The United States Court of Appeals for the Fourth Circuit

issued its decision affirming Movant's conviction and remanded

the case for resentencing on November 17, 2003.  The appellate

court issued its Judgment on December 11, 2003.  The Court
resentenced Movant on March 12, 2004.

Movant contends that Resentencing Counsel should have been
aware of the pendency of Blakely v. Washington, 542 U.S. 296
(2004) (argued March 24, 2004) and should have sought to defer
the resentencing until the case was decided.[14]  Had he done so,
Movant contends, the Court would have been able to apply Blakely
and impose a sentence less than 480 months.

At argument on the instant motion, Government counsel
argued that even if Blakely were applicable, it would not affect
the sentencing of Movant since the jury (not the judge) had
found the quantity of drugs involved.  Movant countered by
contending that Blakely was the predecessor to United States v.
Booker, 543 U.S. 220 (2005), which was argued October 4, 2004
and decided January 12, 2005.[15]  Presumably, the current
contention is that even if Blakely did not help Movant, Booker,

---

[14]    The Supreme Court, in Apprendi v. New Jersey, 530 U.S. 466,
490 (2000), had held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt."  Blakely held that
the "statutory maximum" sentence, for purposes of Apprendi, "is
the maximum sentence a judge may impose solely on the basis of
the facts reflected in the jury verdict or admitted by the
defendant."  542 U.S. at 303 (emphasis in original).
[15]    Booker held that the Federal Sentencing Guidelines must be
"merely advisory," rather than mandatory, in order to avoid
violating the Sixth Amendment.  543 U.S. at 233, 268.

would have so that resentencing should have been delayed from
March, 2004 until the Supreme Court 2004-2005 term.

The Court must note that it typically will agree to defer a
sentencing (or other proceeding) if there were a pending
appellate case that could resolve a significant issue presented
in the near future.[16].  Indeed, in the instant case, the Court
deferred the instant decision so that it would have the benefit
of the decisions in Frye and Lafler.  However, awaiting Blakely
and/or Booker would have been useless.

On March 12, 2004, the Court was not sentencing Movant.  It
was resentencing Movant in compliance with a binding Order of
the United States Court of Appeals for the Fourth Circuit.  The
Court had no ability to impose any sentence other than 480
months.  Accordingly, no purpose would have been served from a
deferral of the resentencing.

---

[16]   As would have been the situation with Blakely, since a June
decision would have been anticipated.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody entitled "Motion" [Document 530] amending the <u>pro se</u> Motion for 2255 Relief [Document 503] is DENIED.

SO ORDERED, on <u>Thursday, July 5, 2012</u>.


                              _____/s/_____
                                 Marvin J. Garbis
                            United States District Judge

35